# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**JAZMIN IBRAHIM,**

    **Plaintiff,**

**v.**                                                                             **Case No: 5:13-cv-54-Oc-PRL**

**COMMISSIONER OF SOCIAL SECURITY**

    **Defendant.**

## ORDER

This matter is before the Court on Plaintiff's Complaint, (Doc. 1), seeking review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for supplemental security income under the Social Security Act. On January 22, 2014, the Court heard oral argument.

Having considered the memoranda of the parties, (Docs. 12 and 16), and having heard oral argument, the Court concludes for the reasons set forth in the attached Findings, which are incorporated by reference, that the Administrative Law Judge failed to apply the correct legal standards and that his final decision is not supported by substantial evidence. Accordingly, it is hereby

**ORDERED**

1. Pursuant to sentence four of 42 U.S.C. §§ 405(g), 1383(c), the Commissioner's final decision in this case is **REVERSED AND REMANDED** for further proceedings consistent with the attached findings.

2. The Clerk is hereby directed to enter judgment accordingly and to **CLOSE** the file.

3. The deadline to file a motion for attorney's fees pursuant to 42 U.S.C. § 406(b) shall be **THIRTY (30) DAYS** after Plaintiff receives notice from the Social Security Administration of the amount of past due benefits awarded. Upon receipt of the notice, counsel for Plaintiff shall promptly email the Government's attorney and the OGC attorney assigned to the case to advise that the notice has been received.

**DONE** and **ORDERED** in Ocala, Florida on January 24, 2014.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF FLORIDA
                          OCALA DIVISION

                    Case No. 5:13-cv-54-Oc-PRL

                        January 22, 2014
                     10:06 a.m. - 11:21 a.m.
                         Ocala, Florida


JAZMIN IBRAHIM,

                         Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____/



          EXCERPTED TRANSCRIPT OF ORAL ARGUMENTS
         BEFORE THE HONORABLE PHILIP R. LAMMENS,
              UNITED STATES MAGISTRATE JUDGE


Appearances of Counsel:

     For the Plaintiff:     Mr. J. W. Chalkley
                            (Appearing Telephonically)

     For the Defendant:     Mr. John F. Rudy
                            (Appearing Telephonically)




Reported by:     Kelly Owen McCall, Freelance Reporter

                        OWEN & ASSOCIATES
                 P. O. BOX 157, OCALA, FLORIDA 34478
                  352.624.2258 * owenassocs@aol.com
```

1                    P R O C E E D I N G S

2    January 22, 2014                              10:06 a.m.

3                         *   *   *

4            THE COURT:  All right, gentlemen.  As I said
5    earlier, I have reviewed and considered the record in this
6    case, including the briefs of the Plaintiff and the
7    Commissioner; the transcript of the hearing held before the
8    Administrative Law Judge; the written opinion of the ALJ;
9    and the records in the case, including, but not limited to,
10   those records referenced and cited in the briefs of the
11   parties.  As you know, I have also heard oral argument from
12   counsel for the parties.

13           The Commissioner's findings of fact are, of
14   course, conclusive if supported by substantial evidence.
15   And substantial evidence is more than a scintilla.  The
16   evidence must do more than create a suspicion of the
17   existence of a fact.  It must include such relevant evidence
18   as a reasonable person would accept as adequate to support
19   the conclusion.

20           When the Commissioner's decision is supported by
21   substantial evidence, the Court will affirm, even if the
22   reviewer would have reached a contrary result as a finder of
23   fact and even if the reviewer finds that the evidence
24   preponderates against the Commissioner's decision.

25           Nevertheless, the Commissioner's failure to apply

the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted would mandate reversal.

The ALJ begins his review of the evidence in December of 2008. That is the time that Dr. Character, a consultative examiner, examined the Plaintiff. I note that the Plaintiff is correct, it's not apparent what weight is given to Dr. Character, though some weight is given to her statement that the Plaintiff's efforts were questionable, in terms of determining the Plaintiff's lack of credibility.

However, I think it's important to recognize that Dr. Character's assessment predates the Plaintiff's inpatient time at The Centers, where she was Baker-Acted from December 10th through December 13th, 2008.

Dr. Weber, a nonexamining doctor, noted in December 2008, that the Plaintiff had moderate limitations. The ALJ discredits Dr. Weber's assessment that her limitations are moderate, though he doesn't give much explanation as to why. I believe Dr. Weber's assessment was made during the time the Plaintiff was inpatient and that inpatient stay would certainly support the assessment of Dr. Weber, that her limitations were moderate.

Again, the ALJ discusses these records that predate her application. Her application was August of 2009.

1    In December 2008 through July of 2009, the
2  Plaintiff has, from The Centers, consistently low GAF
3  scores, ranging from 35 to 45.  During that period, another
4  nonexamining doctor, Dr. Wiener, noted that the Plaintiff
5  had moderate limitations, which would be more consistent
6  with the GAF scores she was receiving from her psychiatric
7  care treatment facility than the ALJ's assessment of mild
8  limitations.
9    The Plaintiff shows some improvement with a GAF
10 score in September of 2009 of 50.  I note these GAF scores
11 because the ALJ discusses them throughout his opinion and
12 does argue, in support of his overall assessment of the
13 Plaintiff, that the Plaintiff's GAF scores are improving,
14 showing improvement.  Despite that, though, the GAF scores
15 were still consistently low.  A GAF score of 50 shows
16 serious limitations.
17    Despite a GAF score of 50 in September 2009,
18 showing serious limitations, a consultative examiner, Dr.
19 Choksi, who is really doing a physical examination of the
20 Plaintiff, does note, during his physical examination, that
21 the Plaintiff has normal affect, mood and intellect.
22    I don't believe the ALJ states precisely what
23 weight he gives to Dr. Choksi, but he does rely on this
24 normal mental status assessment of Dr. Choksi to support his
25 opinion.

1    He also relies on Dr. Chase, who gave an opinion
2  in November of 2009 of mild limitations.  Dr. Chase's
3  nonexamining opinion is based in large part on Dr. Choksi's
4  examination.  Again, he was giving a physical examination.
5    Dr. Carter, who the ALJ relies on considerably,
6  gives an opinion in March of 2010, despite the earlier GAF
7  scores from September 2009 of 50.  Now, Dr. Chase, Dr.
8  Carter and Dr. Choksi all predate the very low GAF scores
9  given by Dr. Rye, ARNP Rye, Nurse Rye from July of 2010
10 through January of 2011.
11   Dr. Carter did not then have the benefit of those
12 records or the record of Dr. Nanjundasamy from May of 2011,
13 giving a GAF score of 45, showing major and serious
14 impairments and limitations.
15   The other thing about Dr. Carter is that he didn't
16 appear to review the records from December 2008 from The
17 Centers, beginning with the Plaintiff's admission and
18 treatment for severe depression and her low GAF scores in
19 the lower 40s.  But despite that, these are the opinions
20 that the ALJ relies on.
21   All of that may be okay if Dr. Nanjundasamy
22 hadn't, in May of 2011, reported a GAF score of 45, and made
23 treatment notes that the Plaintiff was sad and tearful, was
24 feeling agitated and angry -- which, as I said earlier on
25 the record, is consistent with Nurse Rye's notes -- and that

1   the Plaintiff was having psychomotor retardation.  That's at
2   transcript page 1139.
3           Also the ALJ's reliance on those opinions that
4   predate Nurse Rye's assessment might also be more
5   supportable if the ALJ had appropriately discredited Nurse
6   Rye, assuming he could.  But he says that Nurse Rye's low
7   GAF scores, ranging from a low of 20 in January 2011, at
8   which time the Plaintiff was actually arrested and,
9   according to Nurse Rye's deposition in the transcript, page
10  1051, was Baker-Acted for a second time, to a high in the
11  low 40s, the ALJ says that these GAF scores aren't supported
12  because the Plaintiff consistently says she's doing fine
13  when she talks to Nurse Rye.
14          But as I said earlier, if you actually look at
15  Nurse Rye's medical records, Nurse Rye notes that, although
16  the Plaintiff says she feels fine, that she is having
17  limited insight and judgment; that her speech is poor, slow
18  and hesitant; that she is not in remission; that she
19  isolates herself; that she's experiencing thought blocking;
20  she is slow to answer questions; stares with blank
21  expression.  This is at transcript 970.
22          At transcript 971, similar findings by Nurse Rye
23  that would support her GAF scores, her mood and affect,
24  referring to the Plaintiff's mood and affect is depressed
25  and blunted; again, her speech is slow; she contracts for

1  safety; her judgment is limited; she is at risk; she still
2  experiences AH and SI, auditory hallucinations and suicidal
3  ideations; she is having difficulty accepting the grieving
4  process.
5         In August of 2010, the Plaintiff says she is up
6  and down, in terms of her mood, she doesn't want to discuss
7  her son's death.  Nurse Rye notes that the Plaintiff does
8  not seem improved since her last visit, appears depressed
9  and angry, agitated and constricted.  This is at 972.
10         And these records from Nurse Rye are consistent
11  with her GAF scores, despite the ALJ's somewhat conclusory
12  statement that the GAF scores should be disregarded and
13  Nurse Rye's opinion should be disregarded because the
14  Plaintiff said she was fine.
15         The GAF score of 50 in September 2009, another GAF
16  score of 50 in December of 2009, a high of 55 in March of
17  2010 by Dr. Fishel at transcript 974, just a few months
18  before the low GAF scores of Nurse Rye in July of 2010 and
19  the subsequent low score by Dr. Nanjundasamy in May of 2011,
20  a 45, and even a high in July of 2011 of 55 certainly don't
21  support the ALJ's assessment that Nurse Rye should be
22  discredited because her scores are different from the
23  doctors' scores.  They may be a little lower, but,
24  nonetheless, they are all low, both before and after the
25  period that Nurse Rye is recording some significant problems

1   with the Plaintiff.

2           This is a case where we have a plaintiff who has
3   sought regular, sometimes monthly psychiatric care.  She has
4   sought care for pain regularly.  She had back surgery for
5   pain.  She had many low GAF scores; indeed, as far as I can
6   tell from the record, none higher than 55.  She has been
7   Baker-Acted on one occasion, possibly two.  Those records
8   alone tend to show that there's not substantial evidence to
9   support the ALJ's findings.

10          The opinions of Nurse Rye, as I said, are not
11  inconsistent with her record evidence and the reasons for
12  discrediting her are not supported by substantial evidence.
13  Despite the Plaintiff's assertions of wellbeing, Nurse Rye's
14  observations suggest otherwise and support Nurse Rye's
15  assessments.

16          The GAF scores, as I said, both before and after
17  that period where Nurse Rye is giving low GAF scores,
18  support Nurse Rye's assessment.  Her doctors were
19  considering treatment with lithium.  Her doctor, Dr.
20  Nanjundasamy, was reporting a low GAF score of 45 and a high
21  of 55.

22          The ALJ's and the Government's reliance on
23  improving GAF scores seems misplaced.  As Judge Baker
24  recently held in an opinion, if the ALJ is going to rely
25  even in part on GAF scores, he cannot rely only on improving

1  scores and ignore the declining scores in order to
2  characterize those scores as a positive response to
3  treatment.  That is Romanzi versus Commissioner of Social
4  Security.  The citation is 2011-WL-3862527, Pinpoint at 7,
5  Middle District of Florida, September 1st, 2011 case.
6      As I mentioned, substantial evidence does not
7  support either the weight given to Dr. Carter.  Dr. Carter
8  doesn't include or his opinion didn't include an assessment
9  or even a review, it appears, of the December 2008 Centers
10 admission or treatment records.
11     It doesn't include, because it predates, the
12 problems Nurse Rye notes and Dr. Nanjundasamy notes,
13 beginning at least in July of 2010, including hallucinations
14 by the Plaintiff, which Nurse Rye also mentions in her
15 deposition testimony.
16     And, lastly, the records from Dr. Correa do tend
17 to support the Plaintiff's position, do tend to support and
18 are consistent with Nurse Rye's assessments and Dr.
19 Nanjundasamy's assessment.
20     And I should say there is no -- as far as I can
21 tell, no specific weight given to Dr. Nanjundasamy.  And
22 when you are dealing with such low GAF scores, 45 and 55, I
23 don't think it's -- I don't know how you can say that the
24 RFC accounts for her limitations, when scores in the 40s and
25 50s show severe, serious and major impairments.  And so that

1  was error, not to state what weight was being given to Dr.
2  Nanjundasamy.
3         I was saying that Dr. Correa's medical records
4  tend to support Nurse Rye and Dr. Nanjundasamy's GAF scores
5  and medical assessments.  Dr. Correa, at transcript page
6  1145, in a report from August 20th, 2011, notes that the
7  Plaintiff has marked ADLs in social functioning and severe
8  concentration, persistence and pace limitations, and
9  affirmatively has hallucinations, delusions and paranoid
10 thinking.  That record should be reviewed on remand.
11        I appreciate that Nurse Rye is not an acceptable
12 medical source, that is she is a nonmedical source, but it
13 seems like she fits squarely into SSR-06-3p, in that she is
14 a medical treater; she is a nurse; she did provide
15 significant treatment to the Plaintiff; her opinions are not
16 inconsistent with Dr. Nanjundasamy and nor are they
17 inconsistent with Dr. Correa's records that I just
18 mentioned.
19        And the ALJ needs to consider those records and
20 explain, if no weight is given to them, why no weight is
21 given.  The reasons presently stated in the ALJ opinion are
22 not sufficient for the reasons I stated on the record.
23        Accordingly, the Commissioner's decision should be
24 remanded.  It both fails to provide the Court with
25 sufficient reasoning to determine whether the proper law is

1  applied and it is not otherwise supported by substantial
2  evidence.
3       Therefore, I reverse the Commissioner's decision
4  and remand under Sentence 4 of Section 405(g) for additional
5  proceedings consistent with this Court's decision.
6       If Plaintiff ultimately prevails in this case on
7  remand, any motion for attorney's fees under 42 USC Section
8  406(b) must be filed within 30 days after his lawyer or her
9  lawyer receives a letter from the Commissioner setting forth
10 the amount of past-due benefits and the amount of fees set
11 aside for attorney's fees.
12      Upon receipt of this letter from the Commissioner,
13 counsel for the Plaintiff shall send her e-mail notice to
14 the Government's attorney, any OGC lawyer assigned to the
15 case, so that they can calendar the deadline.
16      The Court will include this in its written order.
17      I believe that is all.  Is there anything else to
18 take up from the Commissioner?
19      MR. RUDY:  No, Your Honor.  Thank you.
20      THE COURT:  From the Plaintiff?
21      MR. CHALKLEY:  No, Your Honor.  Thank you.
22      THE COURT:  All right.  Thank you both.
23      (Thereupon, the proceedings in this case for this
24 date were concluded at 11:21 a.m.)
25                        - - -

1   C E R T I F I C A T E

2       I, Kelly Owen McCall, RPR, FPR, Freelance Stenographic
    Reporter, do hereby certify that the foregoing transcript is a
3   true and correct computer-aided transcription of my stenographic
    notes taken at the time and place indicated therein.
4

      /s/ Kelly Owen McCall                    January 23, 2014
5
        Kelly Owen McCall                          Date
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

OWEN & ASSOCIATES
P. O. BOX 157, OCALA, FLORIDA 34478
352.624.2258 * owenassocs@aol.com